Filed 8/9/23  In re Huff CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MICHELLE HUFF,<br><br>on Habeas Corpus. | G061433<br><br>(Super. Ct. No. 12HF3120)<br><br>O P I N I O N |

Original proceedings; petition for writ of habeas corpus.  Petition granted in part and denied in part.

Kravis, Graham & Zuker and Bruce Zucker, for Petitioner.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Gregory J. Marcot, Deputy Attorneys General, for Respondent.

\*   \*   \*

## INTRODUCTION

Petitioner Michelle Huff seeks a writ of habeas corpus based on her challenge to a special condition of her parole that stated the following: "You shall inform all persons with whom you have a significant relationship; e.g., dating and/or roommate(s), about your criminal history, and you will inform your parole agent about the relationship." We grant the petition in part because the special condition, as applied to justify a parole violation, failed Huff's right to due process. The petition insofar as it seeks to strike the special condition at issue in its entirety is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

*A. Context of Huff's Challenged Parole Condition*

In 2016, Huff was convicted on three counts of committing lewd acts against a minor under the age of 14 years old and one count of inducing that child to commit a lewd act in 2012. Huff, then 45 years old, caused the then 11-year-old victim to ingest drugs and drew the victim into sexual activity that Huff engaged in with her boyfriend, while consuming drugs at Huff's home.

Huff was released on parole as a sex offender in 2018. General and special conditions for her parole were imposed and that same year Huff submitted a grievance (not the one at issue here) for several of the special conditions, including one that used the term "'significant relationship.'" Huff asserted it was overbroad.

As part of the administrative response by the California Department of Corrections and Rehabilitation (CDCR), a district parole administrator interviewed Huff for an hour and a half to learn more about her grievance. Ten days later, the administrator wrote to Huff (2018 memorandum), concluding two of the challenged conditions should be modified, but not the *significant relationship* condition. On that point, the administrator explained: "Significant relationship in this context is referring to having contact with individuals who have significant knowledge of you."

2

The record presented shows Huff filed more grievances and pursued remedies for different aspects of her parole that provide peripheral context. For example, it shows that in 2020, Huff filed a petition for a writ of habeas corpus that resulted in the vacatur of a special parole condition restricting how close she could get to places where children congregated, but not for any prior version of the "'significant relationship'" condition at issue here. We limit our discussion to events relevant to her current petition in this court.

## B. Special Condition 13 and the Underlying Parole Violation Incident

In February 2021, Huff's parole conditions were reorganized in a document entitled "Notice and Conditions of Parole" (2021 notice), which contained the following Special Condition of Parole No. 13 (the condition) imposed on her: "You shall inform all persons with whom you have a significant relationship; e.g., dating and/or roommate(s), about your criminal history, and you will inform your parole agent about the relationship." The reason for the condition is stated as follows: "Based on factors and circumstances directly related to the offender's commitment offense(s), the imposition of this condition will assist in the goal of preventing the offender from committing subsequent criminal offenses under federal, state, or local laws."

According to the undisputed record presented, "before agreeing to abide by the terms of her parole [through her signature two days later], Huff was provided with a copy of her general and special conditions of parole, was given an opportunity to read all of the parole conditions, and was afforded an opportunity to ask her parole agent[, Maria Serrano,] any questions about those conditions."

Two months after signing the notice, Huff had dinner with a friend, R.F., in April 2021, which led to agent Serrano initiating a parole violation report against Huff, based on the condition. Specifically, in a document entitled "Parole Violation Decision Making Instrument" (PVDMI) Serrano asserted Huff violated the condition by (1) "not

3

informing [Serrano] of [Huff's] significant relationship and [(2)] by not providing a letter from [R.F.], stating he is aware of her criminal history, as noted in" the condition. A supervisor approved the recording of a parole violation and determined the appropriate CDCR response would be to allow Huff to continue on parole.

## C. Huff's Pursuit of Administrative Remedies

Huff was notified of the PVDMI on May 4, 2021. Three weeks later, she submitted two CDCR grievance forms, signed May 24, 2021. The first form contained what we will refer to as "Claim 1" (because, for convenience, we adopt how the CDCR and Huff refer to it), asserting the following: "Special Condition 013 re: 'significant' relationship is unclear on its face; See attached."

The second form, which we will refer to as "Claim 2," specifically focused on the PVDMI. Huff asserted: "Parole Agent Serrano violated me because I was having dinner with a childhood friend. He is not my 'roommate, [sic]' nor do I consider to be in a 'dating relationship' with him as suggested by Special Condition 013. This condition is void on its face and as applied to me, in violation of the federal and state constitutional due process clauses because it is vague. This condition is regularly used by DAPO." The acronym refers to the Division of Adult Parole Operations, which is a division of the CDCR. (Gov. Code, § 12838.1, subdivision (c).) We do not distinguish between them in our discussion because the distinction is immaterial to this petition.

Just under two months after Huff submitted her grievances, the CDCR responded in a July 22, 2021 document entitled "Claimant Grievance Claims Decision Response" (grievance decision). Claim 1 was deemed "rejected" as untimely, because Huff signed her 2021 notice in February and did not submit her grievance form within 30 days.

For Claim 2, the CDCR's grievance decision denied it as "[d]isapproved," reasoning as follows: "You[, i.e., Huff,] were found to have contact with a childhood

4

friend, [R.F.], who[] you have known since you were 9 years old.  You also advised your agent that you have lunch or dinner periodically with [R.F.].  [He] is a significant person in your life as described in Department Operations Manual (DOM) section 81020.7.1."

For both claims, the CDCR advised Huff she could file an appeal with the CDCR's "Office of Appeals," which she did.  Specifically, according to her petition in this court, "[o]n or about August 15, 2021," she filed an administrative appeal for both claims.  Relevant here, for Claim 2, Huff asserted:  "[the conclusion reached by the CDCR] is wrong.  For all of the reasons raised in my [grievance form], CDCR must withdraw the [PVDMI] violation and remove Special Condition 13.  Further, on behalf of all parolees in California who have Special Condition 13 imposed upon them, I appeal."

According to the record presented, the CDCR's office of appeal received Huff's administrative appeal on August 23, 2021, but did not issue a substantive response.  Instead, in an October 23, 2021 document entitled "Claimant Appeal Claims Decision Response", the office wrote "Time Expired" and cited a 60-day regulatory deadline.  In an undisputed exhibit Huff presents, an associate director of the CDCR wrote that "[a]s a result" of the deadline lapse, the "appeal is now closed.  No further action will be taken by the [CDCR] and no appeal of this action is permitted under the regulations."

D.  *Writ of Habeas Corpus*

Huff then filed a petition for writ of habeas corpus in the trial court, challenging the condition.  The court concluded the condition is not unconstitutional and denied the petition.  Huff then filed the present petition for writ of habeas corpus in this court based on our original jurisdiction.  (*In re David* (2012) 202 Cal.App.4th 675, 680– 681.)  We issued an order to show cause, ordering a return and traverse to be filed.  Huff asserts "the [c]ondition is facially overbroad and vague, and must be stricken."

5

**DISCUSSION**

*A. Exhaustion of Administrative Remedies Doctrine*

As a threshold issue, the Attorney General, on behalf of the secretary of the CDCR, argues the petition should be dismissed for this court's lack of jurisdiction because Huff failed to exhaust the CDCR administrative remedies that were available to her. For the reasons discussed below, we conclude Huff exhausted her administrative remedies for her vagueness challenge but not her overbroadness challenge.

The exhaustion of administrative remedies doctrine "(1) . . . serves the salutary function of mitigating damages; (2) . . . recognizes the quasi-judicial tribunal's expertise; and (3) . . . promotes judicial economy by unearthing the relevant evidence and by providing a record should there be a review of the case." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 322; see Penal Code § 5058 [authorizing CDCR secretary to "prescribe and amend rules and regulations . . . for the administration of the parole of persons sentenced" like Huff]; see *In re Prather* (2010) 50 Cal.4th 238, 254 [discussing habeas corpus relief for parolees and doctrine of separation of powers].)

At the time of Huff's 2021 grievance and administrative appeal, relevant CDCR regulations provided as follows: "Completion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant within the [CDCR]." (Former Cal. Code Regs., tit. 15, § 3486, subd. (m).) The section specifies that a claim is not exhausted, however, "if it was disallowed pursuant to . . . subsection 3487(a)," (former Cal. Code Regs., tit. 15, § 3486, subd. (m)), which at that time required a grievance to be submitted "within 30 calendar days of discovering an adverse policy, decision, action, condition, or omission by the [CDCR]." (Former Cal. Code Regs., tit. 15, § 3487(a), incorporating deadline of former Cal. Code Regs., tit. 15, § 3482, subd. (b).)

Based on the regulations as they existed at the relevant time, Huff satisfied all regulatory conditions needed to deem her administrative remedies exhausted on

Claim 2, i.e., challenging Serrano's May 4, 2021 PVDMI parole violation finding. The record is undisputed Huff filed a timely grievance form for Claim 2 followed by a timely administrative appeal of the CDCR's grievance decision.

Contrary to the Attorney General's position, it is ultimately immaterial to Huff's petition that she did not exhaust her available administrative remedies for Claim 1 — i.e., a facial challenge to the condition independent of any violation allegation. True, Huff filed her May 2021 grievance more than 30 days after she signed the February 2021 notice containing the condition (former Cal. Code Regs., tit. 15, § 3482, subd. (b)) and that failure to meet the then applicable regulation amounted to a failure to exhaust administrative remedies (former Cal. Code Regs., tit. 15, §§ 3486, subd. (m) ["A claim is not exhausted if it was disallowed pursuant to . . . 3487(a)"]; 3487, subd. (a)(1) [claim can be rejected if "claimant did not submit the claim within the timeframe required by subsection 3482(b)"]). But we conclude the points are ultimately immaterial in this particular case because the analytical issues presented by Claim 2 cover the same fundamental question as Claim 1: is the condition unconstitutionally vague?[1] We reject the Attorney General's position that a failure to facially challenge a parole condition based on its initial notice categorically bars all future challenges to parole violation findings based on that condition.

---

[1] Huff presents her vagueness argument as two independent prongs, by contending the condition was void both "on its face *and* as applied" for Serrano's May 4, 2021 PVDMI parole violation finding. (Capitalizations omitted, italics added.) For the reasons discussed below, the distinction is immaterial for this petition because we would not grant relief based on a conclusion the condition is categorically (i.e., "on its face") vague. (See *Bucklew v. Precythe* (2019) 587 U.S. ____ [139 S.Ct. 1112, 1127] ["A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation"].)

Notwithstanding our conclusion that the difference between Claim 1 and Claim 2 is analytically immaterial in this particular case, we decline to entertain an aspect of Huff's vagueness argument she presents us but did not present to the CDCR:  her assertion that the challenged condition's use of the term "'criminal history'" adds to its unconstitutional vagueness.  Given the framework of our merits analysis for the vagueness question (discussed further below), we decline to address the assertion because Huff did not first raise it to the CDCR.

Additionally, we do not address another contention Huff presents us but did not present to the CDCR:  that the condition is not only unconstitutionally vague but also unconstitutionally overbroad.  "The concept of unconstitutional vagueness is related to the concept of unconstitutional overbreadth, but 'there are important differences.' [Citation.]"  (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.)   Like the "criminal history" challenge, there is no mention of overbroadness in any of Huff's relevant documents to the CDCR.

In other words, given the particular circumstances of this petition and our aim to promote the policies behind the doctrine of exhausting administrative remedies, we conclude the vagueness challenge that was presented to the CDCR through Claim 2 satisfied the doctrine and is therefore properly presented for this court's adjudication. We also conclude, however, that particular arguments that were not presented to the CDCR with the claim are not properly before this court.

B.  *Huff's Exhausted Vagueness Challenge*

We review a constitutional vagueness challenge de novo.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888 (*Sheena K.*).)  "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are

'embodied in the due process clauses of the federal and California Constitutions. [Citations.]' [Citation.]" (*Id.* at p. 890, citing the U.S. Const., 5th and 14th Amends.; Cal. Const., art. I, § 7.)

Rooted in the United States Supreme Court's opinion in *Connally v. General Const. Co.* (1926) 269 U.S. 385, 391 (*Connally*), in its most traditional application, "[t]he vagueness doctrine bars enforcement of '"a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]' [Citation.] A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation.]' [Citation.] In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have '"*reasonable* specificity."' [Citation.]" (*Sheena K., supra*, 40 Cal.4th at p. 890.)

In *Sheena K.*, the California Supreme Court reviewed a probation condition imposed on a juvenile requiring her to '"not associate with anyone disapproved of by probation.'" (*Sheena K., supra*, 40 Cal.4th at p. 878; see *People v. Austin* (2019) 35 Cal.App.5th 778, 787 [no distinction between analysis of probation and parole conditions].) Relevant here, the high court concluded that "as imposed by the juvenile court, the probation condition [wa]s unconstitutionally vague, but as modified by the Court of Appeal, the condition satisfie[d] federal constitutional requirements." (*Sheena K., supra*, 40 Cal.4th at p. 879.)

The curative change implemented by the Court of Appeal was that it added to the original condition, a clarification that the object of the condition, i.e., '"anyone

9

disapproved of by probation,'" had to be known by the juvenile to be disapproved of before any alleged violative association occurred. (*Sheena K., supra*, 40 Cal.4th at p. 878.)  The change was key because, with it, the juvenile would be "advised in advance whom she must avoid."  (*Sheena K., supra*, 40 Cal.4th at p. 890; see *id.* at p. 891 ["We agree with the Court of Appeal that in the absence of an express requirement of knowledge, the probation condition imposed upon defendant is unconstitutionally vague"].)  This touched on the first of two grounds that can invalidate a parole condition as unconstitutionally vague:  when the condition (1) "fails to give ordinary people fair notice of the conduct it punishes, or [(2) is] so standardless that it invites arbitrary enforcement."  (*Johnson v. United States* (2015) 576 U.S. 591, 595, citing *Kolender v. Lawson* (1983) 461 U.S. 352, 357–358.)

In this matter, the condition's wording — "You shall inform all persons with whom you have a significant relationship; e.g., dating and/or roommate(s), about your criminal history, and you will inform your parole agent about the relationship" — outside of "dating" and "roommate" relationships,[2] are consistent with a conclusion that the condition is unconstitutionally vague because of the open-ended nature of *significant relationship*.  Outside of dates and roommates, the condition leaves reasonable persons to necessarily guess as to who qualifies as a person Huff had a *significant relationship* with and allows different reasonable views on whether the condition applies without providing a sufficiently objective rubric to resolve a dispute.  (*Connally, supra*, 269 U.S. at p. 391.)

But the above does not end our analysis of the question.  Next, we look to imputable context to provide clarification.  (*Sheena K., supra*, 40 Cal.4th at p. 890 ["'abstract legal commands must be applied in a specific *context*'"], citing *People ex rel.*

_____

[2]  The undisputed record shows Serrano's May 4, 2021 PVDMI parole violation did not rest on a finding that R.F. was either Huff's roommate or partner in a dating relationship, the only two examples specified by the condition.  Had such a finding been made, our analysis would be limited to reviewing whether there was sufficient evidence to support the CDCR's finding of one of those relationships.

10

*Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116–1117 ["A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness"].) The Attorney General claims such context for this matter through an internal manual definition.

As quoted earlier, the CDCR, in its July 2021 grievance decision cited the claimed manual at the end of its explanation to Huff, as follows: "You were found to have contact with a childhood friend, [R.F.], who[] you have known since you were 9 years old. You also advised your agent that you have lunch or dinner periodically with [R.F.] [He] is a significant person in your life as described in Department Operations Manual (DOM) section 81020.7.1." The manual, according to the Attorney General, contains the following definition of "'significant other'": "'a person who has significant knowledge of the parolee. This includes, but is not limited to, an individual who makes up a parolee's support group, family, friends, neighbors, associates, church members, colleagues, members of social groups, etc. Individuals who play a consistent part in the parolee's life before, during and after parole.'"

The Attorney General contends the manual's definition of *significant other* sufficiently addresses any ambiguity that exists within the condition. We note first that the need for what amounts to a three-sentence paragraph in the manual to clarify the condition suggests the latter standing alone is vague. Separately, even assuming without deciding that the quoted portion could provide legally sufficient context to clarify the condition, it cannot serve as a valid basis for the PVDMI at issue here because it was confirmed at oral argument in this court that neither the manual nor its proffered clarification was ever delivered to Huff.

For different reasons, we also conclude a separate factual point of context in the record fails to clarify the ambiguity of *significant relationship* in the condition. The record shows that during her 2018 grievance that led to the CDCR's 2018 memorandum, Huff was given the following response by the authoring district

11

administrator, quoted earlier: "Significant relationship in this context is referring to having contact with individuals who have significant knowledge of you."

The response did not clarify from whose perspective *significant* should be determined. So, again, outside of dating and roommate relationships, it remained substantially open to subjective viewpoint what type of relationship would qualify as *significant*. (See Black's Law Dictionary (11th ed. 2019) p. 1662, col. 2 [Defining "significant" as: "1. Embodying or bearing some meaning; having or expressing a sense. 2. Standing as a subtle sign of something; expressive of some hidden or obscure meaning. 3. Of special importance; momentous, as distinguished from insignificant"].)

In sum, we arrive on the same side of the unconstitutional vagueness question *Sheena* K. analyzed. The problem there was not that the juvenile could be barred from associating with certain individuals; the problem was that it was unreasonably vague as to how the juvenile could know who the prohibited individuals were. Analogously, according to the record presented, the condition at issue here required Huff to guess in advance who would be covered by the condition based on the CDCR's uncommunicated interpretation of a *significant relationship*, including who had *significant knowledge* of her. As a result, this additionally reinforced the other independent ground for deeming a legal mandate unconstitutionally vague: it risked a baseline "so standardless that it invites arbitrary enforcement." (*Johnson v. United States, supra*, 576 U.S. at p. 595).

We point out the examples included in the condition, "dating and/or roommate(s)," save it from amounting to a categorical violation of the vagueness doctrine. That is, if the sole question before us was to determine if the condition was unconstitutionally vague in all of its applications, we would answer in the negative. But given that neither of the examples were what the CDCR relied on to find Huff had violated the condition in May 2021, we conclude the condition was applied in a manner that violated the vagueness doctrine because it failed the common intelligence test

12

underlying cases in line with *Sheena K.* Huff and her parole agent could reasonably disagree on whether her relationship with R.F. qualified as a *significant relationship*, and whether he had *significant knowledge* of Huff, without a reasonably objective basis to resolve differing views. The condition's inclusion of two examples of other types of *significant relationship[s]* did not save its application in this instance.

## DISPOSITION

The petition for a writ of habeas corpus is granted in part. The petition insofar as it seeks to strike the special condition at issue in its entirety is denied. The California Department of Corrections and Rehabilitation is ordered to vacate its May 4, 2021 parole violation finding in this matter.


DELANEY, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.

13